## AMES IRON WORKS *v.* WEST and others.

*(Circuit Court, E. D. Louisiana.* April, 1885.)

1. **TRUST—FUNDS MISAPPLIED—RECEIVER.**
    Previous defaults of debts, under a previous contract, where the parties were not the same, and the waiver of default by complainants accepting a balance due with interest, do not amount to a consent on the part of complainants to the misapplication of trust funds.
2. **SAME—EQUITY JURISDICTION—ADEQUATE REMEDY.**
    Where complainant has no adequate remedy at law, and where he presents such a case of a breach of trust as to entitle him to relief in equity, it makes no difference if the defendant is insolvent; complainant's right to have an accounting, and to follow his fund, if it can be traced, is indisputable.

In Chancery. On motion to appoint a receiver.

*J. Ward Gurley, Jr.,* for complainant.

*Chas. B. Singleton, Richard H. Browne, B. F. Choate, Thomas L. Bayne,* and *George Denegre,* for defendant.

PARDEE, J. The bill alleges that in March, 1884, complainant entered into a contract with the defendants by which the said defendants were appointed complainants' agents for the sale of their steam-engines and boilers, for a commission of 25 and 5 per cent., and upon other terms and conditions, and by which contract the defendants stipulated to render an account on or before the tenth of every month of all sales of the previous month, and to make remittances to complainants of the net proceeds within 30 days from date of sales, and to keep all proceeds of sales separate until remittance, and under no circumstances to blend said proceeds with moneys of themselves or of other parties, and to hold said proceeds as trust funds until remittance. That complainants supplied the defendants with a number of steam-engines and boilers, which they accepted and received, to be sold according to the terms and conditions of said contract, and that during the months of March, April, May, and June, 1884, said defendants sold a number of said engines and boilers, for which they received and collected the price, but that they have wholly failed and neglected and refused to pay over the net proceeds of said sales as required by said contract, amounting to the sum $9,903.47, all of which is due and unpaid. That said B. J. West's Son & Co., defendants, failed and suspended payment on or about June 6, 1884, and are insolvent, but they are still in control and possession of their said property and assets and the proceeds of complainants' said engines and boilers, and are daily selling from their stock and disposing of their assets, and the same are rapidly diminishing in number and value, to orators' prejudice and damage. That part of the property and assets now in the possession of defendants was purchased and paid for with the proceeds of the sale of complainants' engines and boilers, or with

---

[1] Reported by Joseph P. Hornor, Esq., of the New-Orleans bar.

a part thereof, which defendants held in trust for complainants under the contract aforesaid. And complainants claim an accounting, and, fearing waste, pray for a receiver, etc.

The case has been heard contradictorily, on notice, with reference to the appointment of a receiver. By the affidavits and showing made, the contract, the sales thereunder, the amount thereof, the failure to keep the same as a separate fund, and to pay the same, and the insolvency, all as alleged, are admitted. The defendants deny that the amount received for engines and boilers under the contract was a trust fund, because in prior dealings between the same parties, since March, 1883, under a similar contract, defendant did not treat the funds as trust funds to the knowledge of complainant, who consented to such use, by receiving interest when funds were not remitted on time; and defendants deny waste, or intended waste.

This is the case proper; but in addition the court has been furnished with affidavits of several reputable citizens and merchants, to the effect that they are acquainted with the business and management of defendants since the failure; that it is well managed; and that, in their opinion, the possession of the court through a receiver will result in waste. In addition is a petition signed by some 30 creditors in various sums, praying the court not to appoint a receiver, on the ground that it would be injurious to the interests of all the creditors.

The proposition of defendants that their previous defaults under a previous contract, where the parties were not the same, and the waiver of the default by accepting the balance due, with interest, amounts to a consent to the misapplication of the trust funds under the present contract, is untenable. The parties to the previous contract were not the same, and there is very serious doubt whether the acceptance of interest on payment after short delay could be taken as an acquiescence in the misapplication of the trust funds. The rule in its widest scope is that long acquiescence by the *cestui que trust*, with full knowledge of the misapplication of the trust fund, will waive the trust. Here there is no long acquiescence with knowledge of misapplication.

The contract in hand was made only four and a half months ago. The only settlement made under it, where interest was paid, was but two days delayed, and that is shown, by affidavit, not to have been to the knowledge of the complainants. In the face of the contract so recently made, that "all proceeds of sales are to be kept separate by the parties of the second part until remitted, and under no circumstances to be blended with moneys of themselves, or of other parties, but to be held as trust funds," it would be preposterous to infer from the one remittance of interest of $1.25, not over two months ago, acquiescence in the diversion of the trust funds, so carefully guarded by the terms of the contract. It is not shown affirmatively what has become of the trust fund. It was tacitly admitted at the bar, on the

hearing, that it had gone into the general business of the defendants, either to pay debts or buy more stock.

The case seems to me to be a clear one of such a breach of trust as to entitle the complainant to relief in equity. He has no adequate remedy at law, and so far as jurisdiction in equity is concerned it makes no difference that defendants are insolvent. Complainant's right to have an accounting and to follow his fund if it can be traced is indisputable. The appointment of a receiver, in a proper case made, is within the sound discretion of the court. The appointment should be made whenever it is necessary, in the opinion of the court, under the showing made, to protect the assets to which complainant must look to satisfy his lien and meet the demands of the decree to which it is clear he will be entitled. In cases of insolvency, where the court is properly informed of the existence of other creditors, their interests in the matter should be looked to and guarded in the exercise of such sound discretion.

In this case the insolvency is conceded, and the court is informed that there are many creditors, but of their number, the amount of their claims, their character as to security, their residence or representation, and of the amount of the insolvent's assets, the court is wholly uninformed.

The showing made on this hearing, so far as it goes, indicates that the insolvents have notified their creditors, and proposed a composition at 30 cents on the dollar, payable in 2, 6, and 12 months, without security, looking to a continuation of the business; and the indications are that such or a similar proposition would be acceptable to those creditors who have petitioned the court against appointing a receiver. If there was a definite proposition before the court from a majority of the creditors, looking to the speedy liquidation and settlement by responsible parties of the business, and guarding and protecting liens and rights like complainants, it would be listened to with favor. But anything looking to the indefinite continuance of the business, or the indefinite liquidation thereof by the defendants, is incompatible with the clear rights of complainant, and, as the court conceives, against the interest of all creditors not secured and not interested in the continuation of the business.

On the sixth day of June, as is shown by affidavit and not denied by defendants, the defendants failed in business. They had then in their hands, or had, in violation of their contract, put into their failing business, nearly \$7,000 of trust funds belonging to complainant, and yet, on the day they failed, as shown by their own exhibit filed, they sold over \$3,000 worth more of complainant's goods, increasing the trust fund by that amount, which increase has shared the fate of the other trust fund. With every disposition to defer to the judgment of reputable merchants, and to protect the general interest of creditors, the court feels bound to protect, as far as may be, the rights of complainant, which protection seems incompatible, under the circumstances,

with leaving the assets of the defendant firm longer in their present condition, and requires that they should be in the possession of the court. A receiver will therefore be appointed.

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.